IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

VALERIE SMITH,                    )
                                  )
            Plaintiff,            )
                                  )
      v.                          )          2:12-CV-259-APR
                                  )
CAROLYN W. COLVIN, Acting         )
Commissioner of the Social Security )
Administration[1],                )
                                  )
            Defendant.            )

OPINION AND ORDER

This matter is before the court on the petition for judicial review of the decision of the

Commissioner of Social Security filed by the claimant, Valerie Smith, on July 6, 2012.  For the

following reason, the decision of the Commissioner is **REMANDED**.

Background

The plaintiff, Valerie Smith, filed an application for Social Security Disability Benefits

and Supplemental Security Income on March 30, 2010, alleging a disability onset date of March

17, 2009.  (Tr. 19)  Smith's applications initially were denied, and again upon reconsideration.

(Tr. 29) Smith requested a hearing, and a hearing was held on January 21, 2009 before

Administrative Law Judge (ALJ) Kathleen Mucerino.  (Tr. 29) Smith and Vocational Expert

Tom Grizesik testified at the hearing.  (Tr. 51)

---

[1]On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social
Security.  Pursuant to Federal Rule of Civil Procedure 25(d), Carolyn W. Colvin is automatically
substituted for Michael J. Astrue as the named Defendant.

At the hearing, the ALJ instructed the VE that he needed to advise all the participants if he gave any testimony that conflicted with the Dictionary of Occupational Titles. (Tr. 120) The ALJ then questioned the VE about the availability of jobs for a hypothetical individual who was restricted to work that, among other things, required no more than one or two step tasks. (Tr. 122) The VE responded that such an individual could perform work as a production assembler, small parts assembler, and electronics worker. (Tr. 123)

The ALJ issued her decision denying benefits on April 8, 2011. Smith requested review by the Appeals council, but her request was denied on May 7, 2012, making the decision of the ALJ the final decision of the Commissioner. Smith filed her petition for judicial review with this court on July 6, 2012.

At step one of the five step sequential analysis applied to determine whether a claimant is disabled, the ALJ found that Smith had not engaged in substantial gainful activity since March 17, 2009, the alleged onset date. (Tr. 21) At step two, she determined that Smith had the following severe impairments: "disorders of back (degenerative and discogenic), arthritis (left knee), asthma, tarsal tunnel bilateral feet, neuropathy of legs, headaches, and adjustment disorder with depressed mood. . . Being overweight is not a severe impairment within the meaning of the Social Security Act." (Tr. 21) The ALJ explained that Smith was 5'11" tall and weighed between 198 and 209 pounds. (Tr. 22) Her Body Mass Index ranged from 27-29, which was considered overweight. (Tr. 22)

At step three, the ALJ determined that Smith did not have an impairment or combination of impairments that met or medically equaled a listed impairment. (Tr. 22) The ALJ considered Smith's musculoskeletal and respiratory problems under Listing 1.02 and 1.04 and her asthma

under Listing 3.02(A). The ALJ also considered whether Smith's mental impairment met the criteria of Listing 12.04. (Tr. 22) The ALJ explained that to satisfy the "paragraph B" criteria, the mental impairment had to result in at least two of the following: marked restriction on activities of daily living, marked difficulties in maintaining social functioning, marked difficulties in maintaining concentration, persistence, or pace, or repeated episodes of decompensation, each of extended duration. (Tr. 22) With regard to concentration, persistence, and pace, the ALJ concluded that Smith had moderate difficulties. (Tr. 23) The ALJ noted that Smith testified that she had depression, that it affected her ability to concentrate, and that she would forget things. (Tr. 23) Smith's mother reported that Smith could pay attention as long as necessary and that she followed written and spoken instruction very well and handled changes in routine. (Tr. 23) The ALJ stated that she was giving Smith the benefit of the doubt by finding that she was moderately limited. (Tr. 23)

The ALJ next determined that Smith had the residual functional capacity (RFC) to do the following:

> perform light work as defined in 20 CFR §§ 404.1567(b) and 416.967(b). She can occasionally climb ramps or stairs, balance, stoop, kneel, crouch, or crawl. She cannot climb ladders, ropes, or scaffolds. She must avoid concentrated exposure to extreme cold, extreme heat, wetness, humidity, fumes, odors, dusts, gases, poor ventilation, and other pulmonary irritants. Due to her depression, pain, medication side effects, sleep deprivation, and other symptoms, her concentration, persistence, or pace is moderately impacted. Therefore, she can only understand, remember, and consistently carry out short, simple, one or two step, rote, and routine instructions and tasks. She can only frequently use her upper extremities for reaching and fine and gross manipulation. (Tr. 23)

The ALJ first listed all of Smith's diagnoses found in the record, including asthma, cervical spine arthritis, disc bulges and herniations, degenerative changes to her discs, bilateral tarsal tunnel syndrome, degenerative disc disease, and cervical spondylosis with foraminal

encroachment.  (Tr. 24) The ALJ explained that Smith had positive straight leg raises on the left in May 2009.  (Tr. 24) She was diagnosed with asthma and left knee pain in June 2009, and prescribed Naproxen and Fosamax medications.  (Tr. 24) The ALJ also noted that Smith was prescribed a Liboderm patch on April 16, 2010.  (Tr. 24) At a May 13, 2010 physical examination, it was noted that Smith had spinuous and paraspinal tenderness in the cervical and lumbar region, and difficulty stooping, squatting, and standing from a sitting position.  (Tr. 25)

Consultative physician Dr. B. Saavedra diagnosed Smith with a history of degenerative disc disease to the lumbar spine, a history of motor vehicle accident which injured her cervical spine, a history of arthritis in the left knee, a history of asthma, and a history of tarsal tunnel in the feet.  (Tr. 25) An EMG was consistent with sensory motor polyneuropathy.  (Tr. 25) On December 31, 2010, Smith was found to have left knee swelling and mild limitation in range of motion.  (Tr. 25) She was diagnosed with left knee infected wound and was prescribed Ibuprofen.  (Tr. 25) On January 7, 2011, she had a limping gait and was diagnosed with severe lower extremity pain and asthma.  (Tr. 25) Smith's treating physician, Dr. Steven Bayer, diagnosed Smith with lumbar radicuopathy, chronic migraine headaches, cervical radicuopathy, cervical spondylosis, and bilateral tarsal tunnel syndrome.  (Tr. 25)

The ALJ then discussed Smith's mental impairments.  (Tr. 25) She reported memory problems on May 13, 2009.  (Tr. 25) She complained of depression the following June and was prescribed Elavil.  (Tr. 25) She again reported depression on July 23, 2009 and January 21, 2010. (Tr. 25) On May 26, 2010, she reported being depressed due to difficulty coping with physical pain, frequent crying spells, difficulty sleeping, low energy level, and poor appetite.  (Tr. 25) Her mental status examination showed tearfulness and difficulty with proverb interpretation, serial

sevens, and fund of information.  (Tr. 25) She gave the incorrect number of weeks in a year.  (Tr. 25) Consultative psychologist Roger Parks diagnosed Smith with adjustment disorder and depressed mood.  (Tr. 25) She was diagnosed with depression on January 7, 2011, and prescribed Cymbalta in February 2011.  (Tr. 25)

The ALJ then stated that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment."  (Tr. 25) The ALJ explained that in determining the extent Smith's symptoms affected her capacity to perform work activities, she considered Smith's statements as to the intensity, persistence, and effects of her symptoms in relation to other evidence, including her "medical history, objective medical evidence supported by clinical signs and laboratory findings, statements from treating or examining physicians or psychologists, statements from other persons, daily activities, the location, duration, frequency, and intensity of pain or other symptoms, precipitating and aggravating factors, the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms, treatment other than medication received for relief of pain or other symptoms, and other factors concerning functional limitations and restrictions due to pain or other symptoms."  (Tr. 25)

The ALJ stated that there were inconsistencies between Smith's statements and the other information of record.  (Tr. 26) At one doctor's visit she reported headaches occurring three times a month and lasting 36-48 hours, but at the hearing she testified that she had headaches every other day.  (Tr. 26) The ALJ stated that frequent headaches were not supported by the

medical records.  (Tr. 26) Smith also reported that her doctors have kept her from working, but the medical records did not document that she was told that she could not work.  (Tr. 26)

The ALJ went on to explain that Smith's testimony was exaggerated.  (Tr. 26) Smith's mother noted a "good list" of activities of daily living that Smith could perform, which the ALJ found contrary to Smith's testimony that she had been receiving help with laundry, vacuuming, cleaning the bathroom, dusting, and preparing big meals since December 2010.  (Tr. 26) The ALJ noted that this was inconsistent with Smith's treatment history because there were minimal abnormal findings at the time of Smith's December 2010 ER visit, and at that time, it was noted that she had improved, that her condition was stable, and that no restrictions were placed on her activities.  (Tr. 26)

Smith testified that her low back pain was at an 8 on a 10 point scale and reported pain from her legs to feet.  (Tr. 26) She stated that generally her pain varied from a 7-10.  (Tr. 26) The ALJ found that the medical records did not support this testimony.  (Tr. 26) Smith reported that she could sit for an hour, stand for only 20-30 minutes, and walk for only ½ a block, but the ALJ stated that the clinical findings did not support that her exertional abilities were compromised to the degree alleged.  (Tr. 26) At the hearing, she had great posture, and there was no hint of a limp from pain or numbness.  (Tr. 26)

The ALJ then listed the medications Smith testified to taking and her reported side effects, including daily nausea from Cymbalta.  (Tr. 26) The ALJ noted that Prilosec helped and concluded that the lack of invasive procedures suggested limited pain complaints.  (Tr. 26)

The ALJ then stated that the medical record was fully consistent with her assessed RFC. (Tr. 26) A May 13, 2010 physical examination showed recent and remote memory preserved,

normal examination of the lungs, full range of motion in the lumbar and cervical region, negative straight leg raise, normal examination of lower extremities, normal gait, and no neurological deficits.  (Tr. 26) At a May 26, 2010 examination, Smith had a rational and coherent thought process and maintained concentration well.  (Tr. 26) Her May 2009, September 2009, December 2009, April 2010, June 2010, and September 2010 mental status examinations were normal.  (Tr. 26) On December 31, 2010, a physical examination showed a normal chest examination, normal gait, normal sensory, full neck range of motion, normal back flexion, and no neurological deficits.  (Tr. 26) Her left knee x-ray also was negative.  (Tr. 26) On January 7, 2011, Smith had a normal mental status, neck, and respiratory examination.  (Tr. 26) The ALJ concluded that there was nothing at present to support Smith's purported limitations.  (Tr. 26)

The ALJ then noted that Smith was able to participate in the hearing without any overt pain behavior and without being distracted.  (Tr. 26) She responded to the questions in an appropriate manner.  (Tr. 26)

The ALJ next stated that Smith's activities of daily living were inconsistent with her claim of total disability at all exertional levels.  (Tr. 27) Smith reported that she cooked, read, and watched television. (Tr. 27) In December 2010, independent daily living was noted.  (Tr. 27) She testified that she spent her day watching television and talking to her grandchildren when they visited.  (Tr. 27) Smith's mother reported that Smith shopped, cooked, watched television, took her grandchild to school, prepared meals daily, washed, ironed, and drove.  (Tr. 27)

The ALJ then stated that she gave the treating doctor's opinion little weight because it was not supported by the objective medical findings, but that she gave the state agency doctor's opinion significant weight since it was supported by the medical records.  (Tr. 27) The ALJ

concluded that in light of Smith's medical treatment history, the medical signs and findings, and the treating doctor's and State agency doctor's opinion, Smith's testimony was not totally credible and that Smith had the RFC she set forth.  (Tr. 27)

At step four, the ALJ determined that Smith could not perform any past relevant work. (Tr. 27) Considering Smith's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Smith could perform, including production assembler (8,000 jobs), small parts assembler (6,000 jobs), and electronics worker (1,000 jobs).  (Tr. 28)

## Discussion

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is limited to a determination of whether those findings are supported by substantial evidence.  **42 U.S.C. § 405(g)** ("The findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive."); *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005); *Lopez ex rel Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).  Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept to support such a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed.2d 852 (1972)(*quoting* **Consolidated Edison Company v. NRLB**, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L.Ed.2d 140 (1938)); *See also Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003); *Sims v. Barnhart*, 309 F.3d 424, 428 (7th Cir. 2002).  An ALJ's decision must be affirmed if the findings are supported by substantial evidence and if there have been no errors of law.  *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013); *Rice v. Barnhart*, 384 F.3d 363, 368-369 (7th Cir. 2004); *Scott v. Barnhart*, 297 F.3d 589,

593 (7th Cir. 2002).  However, "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues."  *Lopez*, 336 F.3d at 539.

Disability and supplemental insurance benefits are available only to those individuals who can establish "disability" under the terms of the Social Security Act.   The claimant must show that she is unable " to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.**" 42 U.S.C. §423(d)(1)(A).** The Social Security regulations enumerate the five-step sequential evaluation to be followed when determining whether a claimant has met the burden of establishing disability.   **20 C.F.R.  § § 404.1520, 416.920**.  The ALJ first considers whether the claimant is presently employed or "engaged in substantial gainful activity." **20 C.F.R.§§ 404.1520(b), 416.920(b).**  If she is, the claimant is not disabled and the evaluation process is over.  If she is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments which "significantly limits . . . physical or mental ability to do basic work activities." **20 C.F.R. §§ 404.1520(c), 416.920(c).**  Third, the ALJ determines whether that severe impairment meets any of the impairments listed in the regulations.  **20 C.F.R. § 401, pt. 404, subpt. P, app. 1.**  If it does, then the impairment is acknowledged by the Commissioner to be conclusively disabling.  However, if the impairment does not so limit the claimant's remaining capabilities, the ALJ reviews the claimant's "residual functional capacity" and the physical and mental demands of her past work.  If, at this fourth step, the claimant can perform her past relevant work, she will be found not disabled. **20 C.F.R. §§ 404.1520(e), 416.920(e).**  However, if the claimant shows that her impairment is so severe that she is unable to engage in her past

relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant, in light of her age, education, job experience and functional capacity to work, is capable of performing other work and that such work exists in the national economy. **42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1520(f), 416.920(f).**

Smith first complains that the ALJ did not weigh properly the opinion of her treating physician, Dr. Bayer. A treating source's opinion is entitled to controlling weight if the "opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. **20 C.F.R. § 404.1527(d)(2)**; *See also Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007); *Gudgell v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). The ALJ must "minimally articulate his reasons for crediting or rejecting evidence of disability." *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000) *(quoting Scivally v. Sullivan*, 966 F.2d 1070, 1076 (7th Cir. 1992)); *See also* **20 C.F.R. § 404.1527(d)(2)** ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.").

Internal inconsistencies in a treating physician's opinion may provide a good reason to deny it controlling weight. 20 C.F.R. 404.1527(c)(2); *Clifford*, 227 F.3d at 871. Furthermore, controlling weight need not be given when a physician's opinions are inconsistent with his treatment notes or are contradicted by substantial evidence in the record, including the claimant's own testimony. *Schmidt,* 496 F.3d at 842 ("An ALJ thus may discount a treating physician's medical opinion if the opinion is inconsistent with the opinion of a consulting physician or when the treating physician's opinion is internally inconsistent, as long as he minimally articulates his

reasons for crediting or rejecting evidence of disability."); *see e.g.* ***Latkowski v. Barnhart***, 93 Fed. Appx. 963, 970-71 (7th Cir. 2004); ***Jacoby v. Barnhart***, 93 Fed. Appx. 939, 942 (7th Cir. 2004).Ultimately, the weight accorded a treating physician's opinion must balance all the circumstances, with recognition that, while a treating physician "has spent more time with the claimant," the treating physician may also "bend over backwards to assist a patient in obtaining benefits...[and] is often not a specialist in the patient's ailments, as the other physicians who give evidence in a disability case usually are." ***Hofslien v. Barnhart***, 439 F.3d 375, 377 (7th Cir. 2006)(internal citations omitted).

Here, the ALJ stated that she gave little weight to Dr. Bayer's opinion, but she provided no further explanation. She did not point to any specific inconsistencies between Dr. Bayer's opinion and the objective medical evidence or explain why the evidence better supported the opinion of the state consultative physician. The Commissioner argues that the ALJ's earlier summary of the objective medical evidence showed that it was not consistent with Smith's alleged limitations. "Thus, it is apparent that the ALJ was giving Dr. Bayer's opinion little weight because the ALJ reasonably found Dr. Bayer's opinion was not well-supported by the objective medical findings." (Dft's Br. p. 6) The court finds it difficult to follow the Commissioner's reasoning. The ALJ did identify discrepancies between Smith's testimony and the objective medical evidence, however, this is not the same as identifying the reasons why the claimant's treating physician's opinion was not consistent with the objective evidence. Nor was reciting the medical notes prepared by Dr. Bayer equivalent to identifying the inconsistencies. The ALJ improperly made a conclusory statement that his opinion was entitled to little weight because it was not consistent with the medical evidence with no explanation of the

inconsistencies or the basis of the weight she assigned. For this reason, it is necessary to remand on this issue.

Smith next argues that the ALJ failed to properly account for her moderate limitations with concentration, persistence, and pace in her RFC finding. SSR 96-8p explains how an ALJ should assess a claimant's RFC at steps four and five of the sequential evaluation. In a section entitled, "Narrative Discussion Requirements," SSR 96-8p specifically spells out what is needed in the ALJ's RFC analysis. This section of the Ruling provides:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum
> amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p (footnote omitted). Thus, as explained in this section of the Ruling, there is a difference between what the ALJ must contemplate and what she must articulate in her written decision. *See Morphew v. Apfel*, 2000 WL 682661 at *3 ("There is a distinction here [in SSR 96-8p] between what the ALJ must consider and what the ALJ must articulate in the written opinion."); *Lawson v. Apfel*, 2000 WL 683256, *2-4 (S.D.Ind. May 25, 2000) (ALJ who restricted the claimant to medium work satisfied the requirements of SSR 96-8p)("[SSR 96-8p] does not require an ALJ to discuss all of a claimant's abilities on a function-by-function basis. Rather, an ALJ must explain how the evidence supports his or her conclusions about the claimant's limitations and must discuss the claimant's ability to perform sustained work

activities.").

Smith argues that the ALJ did not explain how she possessed the concentration, persistence, or pace required to perform even simple one-to-two step tasks, or how someone with moderate restrictions with concentration, persistence, and pace could have remained on-task as required by the industry standards.  In her opinion, the ALJ acknowledged that Smith testified that her depression affected her, particularly with her ability to concentrate, and that she forgot things.  However, her mother reported that Smith could pay attention as long as needed and that she followed written and spoken instructions very well and handled changes in her routine.  It is clear that the ALJ rejected Smith's testimony regarding further limitations with concentration, persistence, and pace because of her mother's testimony to the contrary.  Furthermore, none of the medical records suggested that any further limitation was warranted.  The ALJ satisfied her duty by pointing to evidence that was contrary to Smith's statements and explaining the restrictions Smith had as a result of this limitation.

The ALJ later stated that she would give Smith the benefit of the doubt and find moderate limitations, and she explained that because of Smith's moderate limitation in this area, she could carry out only simple, one to two step rote and routine instructions.  When posing the hypothetical questions to the VE, the ALJ included that the hypothetical individual was moderately limited in concentration, persistence, and pace, and could only carry out short, simple, one to two step routine instructions.  Because the ALJ incorporated the limitations that she found because of Smith's moderate limitation in concentration, persistence, and pace, and the VE identified positions that such an individual could perform in light of these limitations, the ALJ concluded that there were jobs Smith could perform and that she was not disabled.

However, Smith complains that there was a conflict between the VE's testimony and the DOT. The ALJ is responsible for investigating and resolving any apparent conflicts between the VE's testimony and the DOT. **SSR 00–49**; *Weatherbee v. Astrue*, 649 F.3d 565, 570 (7th Cir. 2011). Provided there is no apparent conflict between the VE's testimony and the DOT, the ALJ may rely on the VE's confirmation that the testimony is consistent with the DOT. *Weatherbee*, 649 F.3d at 570. Under some circumstances, the ALJ is free to accept the VE's testimony when it conflicts with or exceeds the specifications provided in the DOT. *See Eaglebarger v. Astrue*, 2012 WL 602022 (citing *Overman v. Astrue*, 546 F.3d 456, 464 (7th Cir.2008) ("An ALJ is free to accept testimony from a VE that conflicts with the DOT when, for example, the VE's experience and knowledge in a given situation exceeds that of the DOT's authors....")). Experience, knowledge, education, and training are all sufficient basses on which the ALJ may adopt the VE's opinion that conflicts with or exceeds the purviews of the DOT. *Eaglebarger,* 2012 WL 602022 at *8. The ALJ satisfies her duty when she questions whether the VE's answer is consistent with the DOT and receives an affirmative answer, even if the VE's response partially is based on his experience, provided there are no apparent inconsistencies that the ALJ must further resolve.

Smith argues that the jobs the VE identified in response to the hypothetical restricting the claimant to work that required the performance of one-to-two step tasks had a reasoning level of two per the DOT.  An individual performing a job that has a reasoning level of two must be able to "(a)pply commonsense understanding to carry out detailed but uninvolved written or oral instructions."  *Dictionary of Occupational Titles, Appendix C- Components of the Definitional Trailer*, 1991 WL 688702.  The DOT states that jobs that involve one-to-two step tasks have a

14

reasoning level of one. *Dictionary of Occupational Titles, Appendix C- Components of the Definitional Trailer*, 1991 WL 688702.

The Commissioner argues that this is not an apparent conflict, citing to ***Terry v. Astrue***, 580 F.3d 471, 478 (7th Cir. 2009). In ***Terry***, the Seventh Circuit determined that there was no apparent conflict between the ALJ's limitation to simple work and the jobs identified by the VE that required a reasoning level of 3. ***Terry***, 580 F.3d at 478. However, the conflict here is more apparent than in ***Terry***. The ALJ did not just limit Smith to simple work. Rather, she specifically stated that Smith could not perform work that required more than one-or-two step instructions, which is the same language used to describe level one. Therefore, there is a direct conflict, and the ALJ must reconsider whether there are jobs Smith is capable of performing that fall into the level one range for reasoning development due to her limitation to simple one-to-two step routine tasks.

Finally, Smith argues that the ALJ improperly assessed her credibility. This court will sustain the ALJ's credibility determination unless it is "patently wrong" and not supported by the record. ***Schmidt v. Astrue***, 496 F.3d 833, 843 (7th Cir. 2007); ***Prochaska v. Barnhart***, 454 F.3d 731, 738 (7th Cir. 2006) ("Only if the trier of fact grounds his credibility finding in an observation or argument that is unreasonable or unsupported ... can the finding be reversed."). The ALJ's "unique position to observe a witness" entitles her opinion to great deference. ***Nelson v. Apfel***, 131 F.3d 1228, 1237 (7th Cir. 1997); ***Allord v. Barnhart***, 455 F.3d 818, 821 (7th Cir. 2006). However, if the ALJ does not make explicit findings and does not explain them "in a way that affords meaningful review," the ALJ's credibility determination is not entitled to deference. ***Steele v. Barnhart***, 290 F.3d 936, 942 (7th Cir. 2002). Further, "when such determinations rest

on objective factors or fundamental implausibilities rather than subjective considerations [such as a claimant's demeanor], appellate courts have greater freedom to review the ALJ's decision." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ must determine a claimant's credibility only after considering all of the claimant's "symptoms, including pain, and the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." **20 C.F.R. §404.1529(a);** *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir.2007)("subjective complaints need not be accepted insofar as they clash with other, objective medical evidence in the record."); *Scheck v. Barnhart*, 357 F.3d 697, 703 (7th Cir. 2004). If the claimant's impairments reasonably could produce the symptoms of which the claimant is complaining, the ALJ must evaluate the intensity and persistence of the claimant's symptoms through consideration of the claimant's "medical history, the medical signs and laboratory findings, and statements from [the claimant, the claimant's] treating or examining physician or psychologist, or other persons about how [the claimant's] symptoms affect [the claimant]." **20 C.F.R. §404.1529**( c); *Schmidt v. Barnhart*, 395 F.3d 737, 746-747 (7th Cir. 2005)("These regulations and cases, taken together, require an ALJ to articulate specific reasons for discounting a claimant's testimony as being less than credible, and preclude an ALJ from merely ignoring the testimony or relying solely on a conflict between the objective medical evidence and the claimant's testimony as a basis for a negative credibility finding.").

Although a claimant's complaints of pain cannot be totally unsupported by the medical evidence, the ALJ may not make a credibility determination "solely on the basis of objective medical evidence." SSR 96-7p, at *1. *See also* **Indoranto v. Barnhart**, 374 F.3d 470, 474 (7th

Cir. 2004); ***Carradine v. Barnhart***, 360 F.3d 751, 754 (7th Cir. 2004) ("If pain is disabling, the

fact that its source is purely psychological does not disentitle the applicant to benefits.").  Rather,

if the

> [c]laimant indicates that pain is a significant factor of his or her alleged inability to work,
> the ALJ must obtain detailed descriptions of the claimant's daily activities by directing
> specific inquiries about the pain and its effects to the claimant.  She must investigate all
> avenues presented that relate to pain, including claimant's prior work record, information
> and observations by treating physicians, examining physicians, and third parties.  Factors
> that must be considered include the nature and intensity of the claimant's pain,
> precipitation and aggravating factors, dosage and effectiveness of any pain medications,
> other treatment for relief of pain, functional restrictions, and the claimant's daily
> activities.  (internal citations omitted).

> ***Luna v. Shalala***, 22 F.3d 687, 691 (7th Cir. 1994); *see also **Zurawski v. Halter***, 245 F.3d
> 881, 887-88 (7th Cir. 2001).

In addition, when the ALJ discounts the claimant's description of pain because it is

inconsistent with the objective medical evidence, she must make more than "a single, conclusory

statement . . . . The determination or decision must contain specific reasons for the finding on

credibility, supported by the evidence in the case record, and must be sufficiently specific to

make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to

the individual's statements and the reasons for that weight."  SSR 96-7p, at *2.  *See **Zurawski***,

245 F.3d at 887; ***Diaz v. Chater***, 55 F.3d 300, 307-08 (7th Cir. 1995) (finding that the ALJ must

articulate, at some minimum level, his analysis of the evidence).  She must "build an accurate

and logical bridge from the evidence to [his] conclusion." ***Zurawski***, 245 F.3d at 887 (*quoting*

***Clifford v. Apfel***, 227 F.3d 863, 872 (7th Cir. 2000)).  When the evidence conflicts regarding the

extent of the claimant's limitations, the ALJ may not simply rely on a physician's statement that

a claimant may return to work without examining the evidence the ALJ is rejecting.  *See*

***Zurawski***, 245 F.3d at 888 (*quoting **Bauzo v. Bowen***, 803 F.2d 917, 923 (7th Cir. 1986)) ("Both the evidence favoring the claimant as well as the evidence favoring the claim's rejection must be *examined*, since review of the substantiality of evidence takes into account whatever in the record fairly detracts from its weight.") (emphasis in original).

Smith argues that the ALJ made an improper credibility determination because she stated that Smith's report of frequent headaches was not consistent with the medical records. Smith points to numerous medical notes recording complaints of headaches and an MRI that revealed periventricular white matter changes, which the doctors stated could have been due to small vessel disease. Smith argues that if the ALJ acknowledged her complaints of headaches and the MRI, she would not have found an inconsistency between Smith's complaints and the objective medical evidence. In her opinion, the ALJ noted that Smith complained of experiencing headaches every other day at the hearing. However, the medical records did not support the frequency of which she testified to experiencing headaches. The ALJ pointed to an exhibit which recorded that Smith experienced headaches three times a month, lasting 36-48 hours. Additionally, as the Commissioner points out, the ALJ distinguished the reports of migraines from the reports of headaches. Although the records contained reports of frequent headaches, it did not reflect that she had migraines to the extent she reported at the hearing.

Smith also complains that the ALJ erred because she noted that Smith testified that her doctors told her that she could not work and that this testimony was inconsistent with the medical records. Smith argues that Dr. Oni noted that Smith was not working because of medical restrictions in a 2007 letter, and for this reason there was no inconsistency between Smith's testimony and what the doctors told her. However, Smith admits that the language of

Dr. Oni's note was ambiguous and not a clear reflection of whether Smith provided him the information or whether he independently verified that Smith was unable to work because of medical restrictions. Given this ambiguity, the court cannot conclude that the ALJ's opinion was patently incorrect. Smith has not pointed to any medical opinions that suggest that she could not work, and the ALJ's credibility determination was based on many factors in addition to this one ambiguity. It would be futile to remand on this basis given that there is no direct conflict.

Smith next argues that the ALJ improperly assumed that Smith did not suffer from pain and postural limitations because of her observations of Smith during the teleconference hearing. Smith complains that the ALJ could not have observed her in a meaningful fashion because the hearing was conducted by teleconference. However, the ALJ did not rely solely on her observations of Smith during the hearing. The ALJ also stated that the clinical findings did not support that her exertional abilities were impaired to the extent she testified. At her May 13, 2010 physical examination, she had a full range of motion in the lumbar and cervical region, a negative straight leg raise, a normal examination of the lower extremities, and a normal gait. Also, a December 31, 2010 physical examination showed normal gait, normal sensory, full neck range of motion, and normal back flexion. Smith has not pointed to any authority that prohibited the ALJ from taking her personal observations into account as one factor among many, and because the ALJ provided further explanation, the court does not find that the ALJ's credibility determination was patently wrong.

Next, Smith complains that the ALJ failed to consider the side effects Smith experienced from taking Cymbalta, including nausea so severe it caused her to stay in bed. The

Commissioner argues that the ALJ considered Smith's complaints of nausea, but noted that Prilosec helped, and that she accounted for Smith's reported side effects by finding that her concentration, persistence, and pace was moderately impacted as a result. However, the record does not reflect that Prilosec helped with the nausea Smith experienced or that it was or could have been substituted for Cymbalta. Although the ALJ noted that she considered Smith's report of nausea, the record does not reveal why she believed this complaint was alleviated by Prilosec, nor is it clear how the restrictions the ALJ found because of Smith's side effects would combat Smith's complaint of nausea. The ALJ must address this on remand.

Smith also complains that the ALJ was required to provide more explanation to support her finding that Smith had exaggerated the severity and intensity of her pain because she did not undergo any invasive procedures. The Commissioner did not respond to this argument, nor did the ALJ cite to any medical evidence in support of her assumption that more aggressive treatment would have been beneficial. The ALJ cannot discredit a claimant's testimony based purely on speculation about whether additional procedures would have benefitted the claimant. *See **Martinez v. Astrue***, 2011 WL 4834252, *8 (N.D. Ill. Oct. 11, 2011). For this reason, the ALJ must readdress this on remand.

Finally, Smith attacks the ALJ's credibility determination for its use of boilerplate language. Although the Seventh Circuit has criticized the use of boilerplates, their use is not reversible error if the ALJ further supports his decision with the record. ***Yost v. Astrue***, 2012 WL 2814373, *13 (N.D.Ill. 2010) (citing *Punzio v. Astrue*, 630 F.3d 704, 709 (7th Cir. 2011)). Here, the ALJ provided additional explanation for her credibility determination and pointed to inconsistencies in the record. For example, the ALJ explained how Smith's mother's testimony

was inconsistent with the activities she could perform.  The ALJ also pointed to normal examination notes and test results to contradict Smith's complaints of debilitating back pain. The ALJ's credibility determination contained more than boilerplate language, and does not deserve to be remanded on this basis alone.

Based on the foregoing reasons, the decision of the Commissioner is **REMANDED** for further proceedings consistent with this Opinion and Order.

ENTERED this 9th day of September, 2013

/s/ Andrew P. Rodovich
United States Magistrate Judge